IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEVE CAHALL

    Plaintiff,

v.

CAREY'S DIESEL, INC. (a/k/a CAREY'S MARINA)

    Defendant.

Civil Action No. 16-653-RGA

## MEMORANDUM ORDER

Presently before the Court is Defendant's Motion for Summary Judgment. (D.I. 42). For the reasons that follow, **IT IS HEREBY ORDERED THAT** Defendant's Motion is **GRANTED**, as to Counts III, IV, V, VI, VII, VIII, X, and XI, and is otherwise **DENIED**.[1]

### I. BACKGROUND

In 2014, a fuel line in Plaintiff's vessel broke and sprayed into the engines' air intakes. (D.I. 43, Exh. 1 ¶ 3). The engines were extensively damaged, so Plaintiff hired Defendant to rebuild and repair them. (D.I. 1 ¶ 33). Plaintiff alleges that he engaged Defendant to make the repairs using genuine MAN diesel parts. (D.I. 46, Exh. 1 ¶ 6).

To obtain reimbursement for the rebuilds and repairs, Plaintiff submitted an insurance claim to American Family Home Insurance Company. (D.I. 43, Exh. 1 ¶¶ 5-7). American Family declined to pay the claim. (*Id.* at ¶ 7). Plaintiff brought suit against American Family in the Delaware Superior Court in December 2015. (D.I. 43, Exh. 1). The complaint stated that the

---

[1] In light of my decision, Counts I, II, and IX remain in the case. Count I asserts breach of maritime contract. (D.I. 1 at ¶¶ 32-37). Count II asserts UCC breach of warranty of workmanlike service. (*Id.* ¶¶ 38-44). Count IX invokes 6 Del. Code § 2513. (*Id.* ¶¶ 105-15).

"[t]otal repair and replacement damages" resulting from the broken fuel line were "in excess of $213,000." (*Id.* at ¶ 3). The complaint further stated, "Plaintiff has submitted to [American Family] reasonable and necessary repair and replacement expenses to cover damages resulting from the fractured fuel line," and American Family's "refusal to pay the aforementioned expenses is a breach of its contractual obligations under the insurance policy." (*Id.* at ¶¶ 7-8).

Later in December 2015, after all repairs had been completed and the Superior Court action had been filed, Plaintiff learned that Defendant had not completed the repairs using MAN parts, but rather after-market parts. (D.I. 46, Exh. 1 ¶ 9).

On July 29, 2016, Plaintiff filed this suit against Defendant. (D.I. 1). In August 2017, Plaintiff entered into a settlement by which American Family paid him $125,000, and the Superior Court action was dismissed by stipulation. (D.I. 43, Exh. 4). Plaintiff alleges that he has spent $435,432.021 to date for repairs to the engines. (D.I. 46 at 5).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most

2

favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## III. DISCUSSION

### a. Judicial Estoppel and Quasi Estoppel

Defendant argues that the doctrines of judicial estoppel and quasi estoppel should prevent Plaintiff from making each of his claims in this Court. (D.I. 43 at 4-6).

The doctrine of judicial estoppel "precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position." *Malascalza v. National R.R. Passenger Corp.*, 1996 WL 159650, at *3 (D. Del. Mar. 12, 1996). Similarly, the doctrine of quasi estoppel

> precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken. Quasi-estoppel applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. To constitute this sort of estoppel the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another.

*Pers. Decisions, Inc. v. Bus. Planning Sys., Inc.*, 2008 WL 1932404, at *6 (Del Ch. May 5, 2008) (internal quotations omitted), *aff'd*, 970 A.2d 256 (Del. 2009).

In Superior Court, Plaintiff argued, "Plaintiff has submitted to [American Family] reasonable and necessary repair and replacement expenses to cover damages resulting from the fractured fuel line." (D.I. 43, Exh. 1 ¶ 7). Defendant argues that this position contradicts Plaintiff's present claims, because repair charges cannot be "reasonable and necessary" if the charges are for "sham work, non-conforming parts, for non-conforming repair work, for parts never replaced, for work not performed related to the non-replaced parts," or if the "bad work and faulty parts" necessitated further repairs. (D.I. 43 at 5 (quoting D.I. 1 ¶ 37)).

3

However, Plaintiff did not learn of the alleged problems until after he made his statement in Superior Court. (D.I. 46, Exh. 1 ¶ 9). Furthermore, the statement can be read to mean that any repair expenses would be "reasonable and necessary" in light of the damage to the engines. Therefore, Plaintiff's claims are not inconsistent with his previously asserted position.

Accordingly, I will deny Defendant's motion, as to judicial estoppel and quasi estoppel.

### b. Counts III through V

Counts III through V of Plaintiff's complaint assert claims under Article 2 of the Uniform Commercial Code. (D.I. 1 ¶¶ 38-66). However, UCC Article 2 "applies to transactions of goods," not to contracts for services. 6 Del. Code § 2-102; *Cropper v. Rego Distrib. Ctr.*, 542 F. Supp. 1142, 1150 (D. Del. 1982). In a case of a "mixed" contract involving both goods and services, a court must determine whether the contract is predominantly for transactions of goods or for the provision of services. *Glover Sch. & Off. Equip. Co. v. Dave Hall, Inc.*, 372 A.2d 221, 223 (Del. Super. 1977). "[W]here materials are furnished or consumed in connection with the rendering of services, the contract will ordinarily be considered to be outside the coverage of the U.C.C." *Id.*

The parties do not dispute that the predominant purpose of their contract was for Defendant to repair and rebuild the engines of Plaintiff's vessel. (D.I. 46 at 11-12; D.I. 50 at 4-5). However, Plaintiff notes that "[i]f the cause of action centers exclusively on the materials portion of the services portion of the contract [i.e., the failure to use genuine MAN parts], the determination may rest upon that fact." (D.I. 46 at 11 (citing *Glover*, 372 A.2d at 223)) (emphasis omitted). Plaintiff argues that Counts III through V focus on the sale of goods, and therefore may invoke the UCC. Plaintiff's citation and argument are unavailing. If a plaintiff brings suit exclusively based on the materials portion of a services contract, then that might

4

inform a court's determination of the contract's predominant purpose. However, *Glover* does not stand for the proposition that each count in a complaint may receive an independent determination of predominant purpose. Rather, the court in *Glover* assessed the contract as a whole.

Here, the parties' contract was for services. Accordingly, Plaintiff may not assert claims under Article 2 of the Uniform Commercial Code. I will grant Defendant's Motion, as to Counts III through V.

### c. Counts VI through IX

Counts VI and VII invoke 6 Del. Code § 2732 ("Consumer Contracts statute"), Count VIII invokes 6 Del. Code § 2352 ("Trade Practices statute"), and Count IX invokes § 6 Del. Code 2513 ("Consumer Fraud statute"). (D.I. 1 ¶¶ 67-115).

As to Counts VI and VII, the Consumer Contracts statute does not apply to a contract whose total price exceeds $50,000. 6 Del. Code § 2735. The total price of the parties' contract exceeds $50,000. (D.I. 1 ¶¶ 78-80).[2] Accordingly, I will grant Defendant's Motion, as to Counts VI and VII.

As to Count VIII, the Trade Practices statute applies only to disputes between competing businesses. *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993) ("[A] litigant has standing under the [Trade Practices statute] only where such person has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another.").[3] Plaintiff is not Defendant's competitor. Accordingly, I will grant Defendant's Motion, as to Count VIII.

---

[2] Plaintiff does not respond to this argument in his brief. (*See generally* D.I. 46).
[3] Plaintiff does not respond to this argument in his brief. (*See generally* D.I. 46).

5

Defendant argues that Counts VI through IX are preempted by maritime law. (D.I. 43 at 9). In light of my above determinations, I need not assess whether Counts VI through VIII are preempted. Instead, I focus only on Count IX.

A contract to repair a vessel is a maritime contract. *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119 (1919). Plaintiff invoked this Court's admiralty jurisdiction when he filed suit. (D.I. 1 ¶¶ 1, 9). "With admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986).

In the event of an inconsistency between a state-law claim and maritime law, "the state law must yield." *See, e.g., DeRossi v. Nat'l Loss Mgt.*, 328 F. Supp. 2d 283, 288 (D. Conn. 2004) (finding admiralty law preempts a claim under the Connecticut Unfair Trade Practices Act because the Connecticut statute's provisions "regarding attorney's fees and punitive damages are not consistent with the standards established in admiralty law"); *Delta Marine, Inc. v. Whaley*, 813 F. Supp. 414, 416-17 (E.D.N.C. 1993) (concluding that the North Carolina Unfair Trade Practices Act was preempted by admiralty law).

Defendant argues that Delaware law on punitive damages is inconsistent with admiralty law on punitive damages.[4] However, it is not clear to me that there is an inconsistency between the two. The Delaware statute allows an award of punitive damages "[i]f the fraud is gross, oppressive, or aggravated, or where it involves breach of trust." *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076-77 (Del. 1983). As to admiralty law, neither party cites Third Circuit case law about punitive damages in admiralty law. However, both parties cite the same District Court holding that under admiralty law, "the Court may award punitive damages where a

---

[4] Plaintiff concedes that attorney's fees are unavailable under the Consumer Fraud statute. (D.I. 46 at 13 n.2).

6

defendant's actions were intentional, deliberate, grossly negligent, or so wanton and reckless as to demonstrate a conscious disregard for the rights of others." *Norwalk Cove Marina, Inc. v. S/V/Odysseus*, 90 F. Supp. 2d 190, 193 (D. Conn. 2000). This law places a similar burden on plaintiffs as Delaware state law. Because I do not find an inconsistency between federal law and state law, I do not find Count IX to be preempted.[5] I will deny Defendant's Motion, as to Count IX. (D.I. 42).

### d. Counts X and XI

Counts X and XI assert claims for negligent misrepresentation and fraud in the inducement, respectively. (D.I. 1 ¶¶ 116-132).

Defendant asserts that they are subsumed by Plaintiff's contract claims, and should therefore be dismissed. (D.I. 43 at 2, 13). Tort claims are barred to the extent they merely "rehash" the breach of contract claims. *Cornell Glasgow, LLC v. La Grange Properties, LLC*, 2012 WL 2196945, at *8 (Del. Super. June 6, 2012). Here, Plaintiff's claims reiterate his contract claims. Plaintiff argues that his fraud in the inducement claim is "extra-contractual" because he "would not have entered into the contract if Defendant had not promised to use genuine MAN parts." (D.I. 46 at 14).[6] However, any party whose contract is later breached by the other party would say that he "would not have entered into the contract." Accordingly, Plaintiff's tort claims are subsumed by Plaintiff's contract claims. I will grant Defendant's Motion, as to Counts X and XI. (D.I. 42).

---

[5] Defendant argues that Plaintiff "never pleaded a claim for punitive damages, even though the case law plainly requires that a plaintiff plead such a claim with specificity in order to place the defendant on notice that punitive damages are at issue." (D.I. 50 at 6). However, Plaintiff did request "treble damages" in his complaint. (D.I. 1 ¶ 115). Unlike the Consumer Contracts and Trade Practices statutes, the Consumer Fraud statute does not have a treble damages provision. § 6 Del. Code 2513. Plaintiff's request for treble damages may or may not be a request for punitive damages. However, since Defendant raised this issue for the first time in its reply brief, I cannot meaningfully evaluate the issue such that I can grant summary judgment, as to Count IX.

[6] Plaintiff does not deny that his negligent misrepresentation claim is subsumed by his contract claim. (D.I. 46 at 14-15).

7

Entered this 23 day of May, 2018.

_____
United States District Judge